Thomas R. Jones, J.
The defendant moves, on the ground of collateral estoppel, to dismiss an indictment (3026/1969) which charges him with the crime of robbery of John T. Mewborns and other occupants of J. & M. Car Service in Brooklyn, on February 25, 1969. The District Attorney favors the dismissal of the indictment. The motion is granted.
The defendant, Thomas Cunningham, was previously tried and acquitted by this court, sitting without a jury, on another indictment (1919/1969) which charged him with the crimes of felony murder and premeditated (common-law) murder of John T. *516 Mewborns, in the premises of J. & M. Car Service on February 25,1969. Both indictments, i.e., 1919/1969, charging felony murder, etc., and 3026/1969, charging robbery, are based upon crimes which were committed at the same time, in the same place, and involved all of the same persons. One indictment could have been found to encompass all crimes committed in the single criminal sortie on February 25, 1969. For reasons not explained or offered, two distinct indictments were found by the Grand Jury and have been prosecuted in two installments.
In announcing its verdict of acquittal at the close of the felony murder trial, the court found that the defendant, Thomas Cunningham, had not been proved guilty of the underlying robbery in the felony murder count, nor of premeditated murder of Mewborns in the J. & M. Car Service office on February 25, 1969, beyond a reasonable doubt. The Trial Justice said, inter alia, that: “the proof does not establish * * * [Cunningham’s] guilt beyond a reasonable doubt of the crime of robbery, and since the underlying crime of robbery falls, and since there is an absence of proof that he intended or conspired with O’Bleanis to kill the deceased at that time and place, the second count of the indictment must likewise be dismissed and the defendant is discharged.” During the felony murder trial two prosecution witnesses testified that they were present in the office of J. & M. Car Service at 218 Livonia Avenue, Brooklyn, on February 25, 1969, when the defendant, Thomas Cunningham, entered and ordered a taxicab. Cunningham was alone. A few minutes later another man, armed with a pistol, entered the office. The gunman, O’Bleanis, brandished his weapon and proceeded to rob three women employees and three unidentified men'who were present in the taxicab office. While the robbery was in full swing, the unsuspecting victim, J. T. Mewborns, entered his office, saw the plight of his employees, and immediately tried to foil the robbery. Mewborns struck at the bandit with a briefcase and knocked the pistol to the floor. He was not quick enough, however, and lost the scramble for the gun. 0 ’Bleanis swiftly scooped up the weapon and fired a single shot. Mewborns fell dead. The bandit-killer thereupon held his other victims at bay as he retreated through the same door he had entered. The gunman permitted only the defendant Thomas Cunningham to leave the premises. Cunningham was the sole occupant of the car service office not robbed or threatened in any manner by the robber-killer, O’Bleanis. The prosecution witnesses testified that Cunningham made no motions and committed no overt acts to aid 0 ’Bleanis in his criminal enterprise. The widow of the deceased victim, Margaret Mewborns, testified *517 that in the midst of the robbery she saw Cunningham hunch his shoulders, as she put it, “ like he didn’t know what was going on.”
At the conclusion of the felony murder trial, the court directed the acquittal of the defendant Cunningham. The District Attorney thereupon joined defense counsel in a motion to dismiss this separate robbery indictment.
COLLATERAL ESTOPPEL MAY BE APPLICABLE TO CRIMINAL CASES WHEN DOUBLE JEOPARDY PROTECTION IS NOT AVAILABLE.

A Rule of Evidence.

Federal courts and many State courts, including the New York Court of Appeals (cf. People v. Rodgers, 184 App. Div. 461, affd. 226 N. Y. 671) have declared that collateral estoppel (res judicata) is applicable to criminal prosecutions (United States v. Oppenheimer, 242 U. S. 85; Sealfon v. United States, 332 U. S. 575; Hoag v. New Jersey, 356 U. S. 464, affg. State v. Hoag, 21 N. J. 496; Harris v. State, 193 Ga. 109; 35 George Washington L. Rev. 1012; 42 New York Univ. L. Rev. [May, 1967], 571; 74 Harvard L. Rev. 24-43 [1960], “ New Trials and Successive Prosecutions, ’ ’ Bis Vexari; and 24 Brooklyn L. Rev. 149 [1957]).
Justice Holmes in United States v. Oppenheimer (supra, p. 88) set forth the equitable framework in which the doctrine should be considered: “ "Where a criminal charge has been adjudicated upon by a court * * * that adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded as a bar to any subsequent prosecution for the same offense. * * * In this respect the criminal law is in unison with that which prevails in civil proceedings.”
At page 87, Justice Holmes stated: “ It cannot be that safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect a liability in debt.”
To emphasize the commitment of the Supreme Court to fundamental fairness in the judicial process, Justice Holmes added (p. 88): “ The safeguard provided by the Constitution against the gravest abuses had tended to give the impression that when it did not apply in terms, there was no other principle that could. But the Fifth Amendment was not intended to do away with what in the civil law is a fundamental principle of justice (Jeter v. Hewitt, 22 How. 352, 364), in order, when a man once has been acquitted on the merits, to enable the Government to prosecute him a second time. ’ ’
*518 Collateral estoppel is a practical as well as an equitable principle. It was evolved by courts in civil cases because the developing industrial society found that continued relitigation of commercial disputes was a drain on commerce and a waste of public funds. Public policy therefore required the establishment of certainty in legal relations (Commissioner v. Sunen, 333 U. S. 591, 597). As applied in civil disputes, collateral estoppel interdicted the use of court processes by litigants as instruments to harass their adversaries. The punitive factors inherent in the relitigation of criminal indictments against a defendant are greatly magnified because the power of the accused js nothing compared to the power of the State. A simple device open to a prosecutor, bent on obtaining convictions, is “to wear the accused out by a multitude of cases with accumulated trials.” (Palko v. Connecticut, 302 U. S. 319, 328.) The harassment factor is multiplied in successive criminal prosecutions for the same offense. For not only is a defendant compelled to lose time and money defending himself but is repeatedly confronted with the immediate loss of his liberty in lieu of bail. Frequently before vindication, and surely after conviction, he faces the loss of the comfort, confidence and companionship of family and friends.
“ Fundamental fairness,” the aim and ideal of American justice, is subverted when State agencies conduct successive prosecutions of defendant for the same offense. Successive litigation of a single issue which has been previously resolved by a jury in a defendant’s favor is contrary to the requirements of fair procedure guaranteed by the Due Process Clause of the Fourteenth Amendment (cf. Hoag v. New Jersey, 356 U. S. 464, 474, supra, dissent by Warren, Ch. J.). It is obvious that such duplication is wasteful of the time and talents of many people and costly to the public at large.
As Mr. Justice Harlan, speaking for the court, in Hoag v. New Jersey (supra, p. 470), said: “ As an aspect of the broader doctrine of res judicata, collateral estoppel is designed to eliminate the expense, vexation, waste, and possible inconsistent results of duplicatory litigation. See Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 820.”
OOLLATEBAL ESTOPPEL-A BULE OP EVIDENCE
Collateral estoppel differs fundamentally from double jeopardy. Double jeopardy is based in the Bill of Bights of the Constitution of the United States and in the Constitution of the State of New York, i.e., the Fifth Amendment to the United States Constitution and section 6 of article I of the New York State *519 Constitution, as well as in section 9 of the Code of Criminal Procedure of New York. Collateral estoppel has no such constitutional or legal basis. Collateral estoppel is ■ a procedural concept; a rule of evidence. In Abbate v. United States (359 U. S. 187, 200) Mr. Justice Brennan identified collateral estoppel in criminal cases as ‘1 an essentially procedural concept * * * less substantial than the constitutional protection of the Double Jeopardy Clause.” (n. 4).
In People v. Rodgers (102 Misc. 437, affd. 184 App. Div. 461, 465, affd. 226 N. Y. 671) the Appellate Division (First Dept.) declared: 11 Res judicata is a rule of evidence which holds that a fact which has been once adjudged or determined by a court of competent jurisdiction must be accepted by the same parties as true in every other court.5 ’ Notwithstanding that it lacks the substantiality of a constitutional safeguard, collateral estoppel has been a doctrine universally applied in the law for the purpose of doing fundamental justice to individual litigants and putting an end to litigation, while the double jeopardy safeguard has only been invoked when the second prosecution is for the same offense and involves the same parties. Collateral estoppel has often applied where the parties have been different, e.g., the findings of fact contained in the judgment of other States. In Wolfe v. North Carolina (364 U. S. 177) the United States Supreme Court reviewed a State court’s refusal in a criminal proceeding to accept a finding of fact in an earlier civil judgment. The doctrine of full faith and credit, which requires that States accept and give effect to the legal judgments of sister States, would be empty rhetoric if New York State courts were not bound by the determination of the internal facts considered and disposed of in the judgments of Federal courts and the courts of sister States. All the more reason, therefore, that collateral estoppel should bar relitigation of issues of law and facts already adjudged in the courts of this State.
FACTS DECIDED IN JUROR TRIAL MUST BE THE SAME AND NECESSARY TO RESULT
Logic and law require that before collateral estoppel will be effective to bar a pending prosecution, it must be shown that the facts presently sub judice have already been fully tried and were necessary to the judgment in an earlier trial (cf. Sealfon v. United States, 332 U. S. 575, 578-579, supra). In The Evergreens v. Nunan (141 F. 2d 927, 928, cert. den. 323 U. S. 720) Judge Learned Hand succinctly stated the matter, as follows: “ It is of course well-settled law that a fact, once decided in an earlier suit, is conclusively established between the parties in a *520 later suit, provided it was necessary to the result in the first suit.”
In People v. Cornier (42 Misc 2d 963, 966), McDonald, J., Supreme Court, Kings County, put the matter thus: “and if one essential point has been finally adjudicated in one trial in favor of the defendant, that question is adjudicated and determined as to all proceedings between the parties.”
A New York court in the case of People v. Grzesczak (77 Misc. 202, 206) stated: “ The only litigated question of fact on both these indictments is the presence of the accused when these crimes were committed. The question having once been decided, it cannot again be tried. Should the jury in this case find the defendant guilty under the defense herein interposed, that of an alibi, we would be confronted with two incompatible verdicts, which would amount to a finding on the one hand that the defendant was not present, and on the other hand that he was present.”
In People ex rel. Thaw v. Lamb (118 N. Y. S. 389), a jury having once found that the defendant was not guilty by reason of insanity, a later prosecution for another crime committed during the same period was barred (cf. other cases to the same effect cited by Sobel, J. in Appendix E-C of People v. De Sisto, 27 Misc 2d 217, 258).
In the instant case the ultimate fact and legal conclusion raised by this indictment, i.e,, whether the defendant did commit or participate in the commission of a robbery of the occupants of the J. & M. Car Service on February 25, 1969, which crime led to the death of John T. Mewborns, was specifically decided in the first trial by his acquittal of felony murder and may not be relitigated de novo. Such a result is logical and just. The American Law Institute code appropriately suggests that the doctrine of collateral estoppel should become operative when “the former prosecution was terminated * * * by an acquittal * * * which * * * necessarily require [s] a determination inconsistent with a fact which must be established for conviction of the second offense ” (Model Penal Code, Tentative Draft No. 5, § 1.10, subd. [2], p. 56).
The specific finding of fact in the first trial, that Cunningham was not guilty of the underlying robbery in the felony murder count of the indictment, permits the direct application of the collateral estoppel principle to his second indictment for the same robbery. Great difficulty would be encountered if there had been only a general verdict of acquittal of felony murder. The question then would have been,1 ‘ What was actually decided by the trier of the facts t ” For the failure of proof as to any essential element of the crime of felony murder would have *521 resulted in the acquittal of Cunningham, even if the defendant had been proved guilty of the underlying robbery beyond a reasonable doubt, e.g., the cause or fact of the victim’s death not proved, absence of a corpus delicti, etc.
In People v. Rodgers (184 App. Div. 461, 465, supra) the appellate court directed Trial Judges to admit into evidence the proceedings in an earlier trial if they point to res judicata, i.e., collateral estoppel, saying: “ If the former judgment of acquittal established the fact that defendant was not present on the occasion in question, the judgment roll and the minutes of the trial should have been introduced in evidence ”.
The answer to the question, whether collateral estoppel applies, must be sought in the record of the first trial, by recourse to the opening statements, the motions at the close of the People’s case and at the close of the entire case, the court’s rulings on these motions, the summations, and the Judge’s charge (People v. Louis, 1 N Y 2d 137; People ex rel. Kwiatkowski v. Trenkl, 169 Misc. 687; United States v. De Angelo, 138 F. 2d 466; United States v. Curzio, 170 F. 2d 354; United States v. Kenny, 236 F. 2d 128). The trial court followed this recommended procedure in People v. Kleinman (168 Misc. 920). After inspecting the minutes of the previous perjury trial, the court concluded that the earlier verdict was conclusive on one of the main issues in the second trial (i.e., whether the defendant knew a Louis Luckman prior to testifying in the first trial) and said: “ The operation of a judgment as an estoppel in respect of matters actually in issue or points controverted in the action wherein the judgment was rendered is merely a rule of evidence (People v. Rodgers, 184 App. Div. 461, 465) and, therefore, applicable in criminal cases (Code of Criminal Pro., § 392).”
This court therefore determines that collateral estoppel applies to this case for the reason that:
1. There are issues identical to both prosecutions, i.e., in the prior felony murder count which charges an underlying robbery as in the instant case, which charges the same robbery. The prosecution had the burden to prove all the elements of the same robbery and particularly the defendant’s participation therein.
2. The prosecution had a full and fair opportunity to litigate the issues of the defendant’s participation in the robbery in the trial of the felony murder charge.
3. A court of competent jurisdiction tried and acquitted the defendant of the crime of felony murder and of the underlying robbery.
4. The issue of the defendant’s participation in the robbery was a material, necessary and essential issue in the felony mur *522 der prosecution, since by statute robbery is a basic element of said crime (Penal Law, § 125.25, subd. 3).
5. It would be fundamentally unfair to relitigate the defendant’s participation in the same robbery of which he had been acquitted by a court of competent jurisdiction (People v. Lo Cicero, 17 A D 2d 31, 34).
In our state of civilization, with all our shortcomings, we share the view of Mr. Justice Douglas in his dissent in Hoag v. New Jersey (356 U. S. 464, 480) that a defendant: “Having once run the gauntlet successfully * * * may not be compelled to run it again. ’ ’
For which reasons the indictment has been dismissed.