Bentley Kassal, J.
issues
After retrial of this indictment, two issues are presented by defendant’s motion to set aside the jury verdict convicting him of conspiracy as well as five substantive crimes:
1. Does the double jeopardy clause of the Fifth Amendment bar conviction on the conspiracy count which had been dismissed by a trial order of dismissal before the first trial of this case ended in a mistrial?
2. If retrial of the conspiracy count is so barred, are the convictions obtained on the other counts in the indictment fatally tainted by the inclusion of this count in the second trial?
FACTS
Defendant was indicted for conspiracy in the first degree, criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first and third degrees and criminal possession of a weapon in the second and third degrees.
He was first brought to trial in February, 1976.
At the conclusion of the People’s case, the Trial Judge dismissed the conspiracy charge with the explanation: "I dismissed that count on the grounds that, in my opinion, the People did not make out a prima facie case of conspiracy * * * As a matter of law”.
The court then granted defendant’s motion for a mistrial on the following grounds: "There has been a great deal of hearsay evidence elicited during the course of this trial. I don’t know that I could satisfactorily instruct this jury to wipe from *711 their minds all of the hearsay evidence that was elicited under the theory of conspiracy. I could give them instructions in that vein, but I don’t think these instructions would, in and of themselves, eliminate from the jurors’ minds all of those prejudicial remarks — all of that prejudicial evidence rather that was elicited”.
On March 23, 1976, prior to retrial of this indictment, a general motion was made to a different Judge sitting in the Calendar Part to dismiss the indictment on the basis of double jeopardy. The motion was denied without a written opinion (evidently on the basis that the mistrial did not bar subsequent prosecution).
On the basis of the March 23, 1976 decision, the case was assigned to me for retrial and on the retrial the indictment was deemed to contain all the counts it contained at the time of the first trial, pursuant to CPL 280.20. The jury returned a verdict convicting the defendant on all counts submitted to them, namely, criminal sale of a controlled substance in the first degree, criminal possession of a weapon in the third degree (three counts) and conspiracy in the first degree.
By the present motion, defendant again raises the issue of double jeopardy. In support of his motion he argues that the recent Court of Appeals decision in People v Brown (40 NY2d 381) decided on June 17, 1976 casts doubt on the constitutionality of CPL 280.20 and that this issue was not specifically raised in the prior motion to dismiss the indictment.
The present motion was referred to the aforesaid Calendar Judge as a motion to renew the previous application and, in turn, it was returned to me on the grounds that there had been no prior decision by him on this issue of double jeopardy.
I. DOUBLE JEOPARDY A. CONSPIRACY
CPL 280.20 provides a "mechanical rule” for the status of an indictment upon a new trial after a mistrial: "Upon a new trial resulting from an order declaring a mistrial, the indictment is deemed to contain all the counts which it contained at the time the previous trial was commenced, regardless of whether any count was thereafter dismissed by the court prior to the mistrial order.”
The trial order of dismissal granted in the first trial of this indictment falls squarely within the last phrase of CPL 280.20 *712 and thus the dismissed conspiracy count was properly revived under the terms of the statute unless the statutory procedure itself violated the double jeopardy prohibition.
Earlier this year Mr. Justice Joseph D. Quinn, Jr. concluded there was such a violation of the double jeopardy prohibition under facts very similar to those presented here (People v Cuvilje, 85 Misc 2d 628) and I am in general agreement with his reasoning.
The Court of Appeals has even more recently found CPL 450.20 (subd 2), [which permitted appeal of a trial order of dismissal], to be unconstitutional, as violating the prohibition against double jeopardy. (People v Brown, 40 NY2d 381, supra.) It is clear that the reasoning applied in that decision is equally relevant under the facts of this case. After examining the recent Supreme Court trilogy of double jeopardy cases (United States v Wilson, 420 US 332; United States v Jenkins, 420 US 358; Serfass v United States, 420 US 377), the Court of Appeals under the facts in its case concluded that where there has been a judgment during trial discharging the defendant on any count the Fifth Amendment prohibits the retrial of the defendant on that count. Further, citing United States v Jenkins (supra) the court noted that this "mechanical” rule is applicable whether the trial order was a resolution of factual issues or on some other basis. (People v Brown, supra, pp 386-394.)
As concluded by Justice Quinn (People v Cuvilje, 85 Misc 2d 628, 632) after reviewing the Appellate Division, First Department decision in People v Brown (48 AD2d 95): "If, as Brown teaches, that order of dismissal is not made appealable by the subsequent mistrial, then, neither may it be automatically dissolved by mistrial. To hold otherwise would be to do nothing short of reducing the remedy to a tentative finding in a jury trial to be dependent for its continued life upon a subsequent verdict.”
I therefore find that CPL 280.20 is unconstitutional as applied to the facts of this case, and that the conviction of the crime of conspiracy in the first degree is violative of defendant’s protection against successive prosecution and repeated jeopardy. (N Y Const, art I, § 6; U S Const, 5th Arndt.)
B. THE SUBSTANTIVE CRIMES CHARGED
The same result does not obtain with respect to the substan *713 tive crimes, which were not dismissed before the mistrial was declared. Retrial on these counts on which there has been no determination, is clearly permissible. (Illinois v Somerville, 410 US 458.)
II. TAINT AS TO REMAINING SUBSTANTIVE CRIMES
Having determined that the conviction on the conspiracy count is barred by the double jeopardy prohibition, the question remains whether the trial of the indictment containing this count in any way affected the validity of the convictions obtained on the substantive crimes. The best way to assess the effect is to see whether the conduct of the trial and the admission of evidence would have been materially different without the conspiracy charge.
A. PROOF OF UNCHARGED CRIME
The first issue raised by this procedure is whether it was error to permit proof of a crime not charged in the indictment.
While it is a general rule of evidence in criminal trials that the State may not prove against the defendant any crime not alleged in the indictment, five major exceptions to this rule were recognized in the classic case of People v Molineux (168 NY 265). The fourth exception described therein and denoted as "common plan or scheme” clearly governs here. Such evidence is competent and an exception to the hearsay rule where a system or connection between the charged and uncharged crimes or acts is shown with a common motive or intent so that the uncharged crime tends to prove the crime or crimes charged. (People v Molineux, supra pp 305-311.)
B. COMPETENCY OF ACTS OR STATEMENTS OF THE ALLEGED COCONSPIRATORS MADE IN ABSENCE OF DEFENDANT
At trial, various acts and declarations of alleged coconspirators were received into evidence on the well-established ground that such acts and declarations of one coconspirator which occur during and in furtherance of the conspiracy or common scheme are admissible and provable against any other coparticipant as an exception to the hearsay rule. (People v Rastelli, 37 NY2d 240, 244, cert den 423 US 995; People v Luciano, 277 NY 348, 358, cert den 305 US 620.)
The exclusion of the conspiracy count from the indictment *714 would not, in itself, render such proof incompetent. "When a conspiracy is shown, or evidence on the subject is given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose are competent, and * * * it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment.” (People v McKane, 143 NY 455, 465, 470.) (See, also, People v Becker, 215 NY 126, mot for rearg den 215 NY 721; People v Cassidy, 213 NY 388; People v Miles, 192 NY 541; People v Lev, 278 F2d 605, cert den 363 US 812.)
Nor does the admission of such evidence violate the defendant’s right of confrontation under the Sixth Amendment, even when the defendant is not prosecuted for the crime of conspiracy. (Dutton v Evans, 400 US 74, 80-83; People v Rastelli, 37 NY2d 240, supra.)
It is axiomatic that the above exceptions, permitting evidence of acts or declarations of others, are not applicable unless a conspiracy or common scheme is first proven. Thus, even though the evidence be competent, it must still be shown to be material.
Under the unique circumstances of this trial, there can be no doubt that this showing has been made. This was clearly established by the jury’s verdict of guilty on the conspiracy charge after they had been extensively instructed with respect to requisite factual elements constituting this crime.
Finally, neither dismissal by the court nor acquittal by the jury on the conspiracy count would change the initial admissibility of the statements. (See United States v Zane, 495 F2d 683, 692, cert den 419 US 895; Ottonamo v United States, 468 F2d 269, 273, cert den 409 US 1128, mot for rehearing den 410 US 948; United States v Pugliese, 153 F2d 497, 500.)
C. ACCESSORIAL CONDUCT
The jury was also charged with respect to the defendant’s criminal liability for the acts of his coconspirators pursuant to section 20.00 of the Penal Law. In this regard it is not necessary that the indictment specify that he solicited, requested, commanded, importuned or intentionally aided such other persons. It is sufficient that the indictment charged him as a principal in the words of the statutes proscribing the conduct. (People v Katz, 209 NY 311; People v Corbalis, 178 NY 516.)
*715 As an accessory, the defendant is criminally liable for the acts of his associates and evidence of their actions is admissible against him. (People v Hardy, 34 AD2d 843.)
Consequently, once the prosecution demonstrated by independent evidence the existence of a joint criminal undertaking or "a partnership in crime” statements of a colleague in furtherance of that enterprise were admissible with respect to substantive crimes charged irrespective of the existence or lack of a conspiracy charge. (See United States v Zane, 495 F2d 683, 692, supra and the cases cited thereat; see, also, United States v Pugliese, supra.)
III. RES JUDICATA AND COLLATERAL ESTOPPEL
A. General Principles
Although the issues of res judicata and collateral estoppel have not been specifically raised by either side, the present motion to dismiss, as well as the previous motion based on double jeopardy and defense objections to the introduction of evidence at trial, have preserved these issues and presented them for adjudication. (See, generally, Ashe v Swenson, 397 US 436.)
Having reached the issue, determination is made somewhat difficult by what has been characterized as the "confused state” of "New York’s law of double jeopardy and collateral estoppel.” (79 Harv L Rev, 433, 436.) For the purpose of this motion, however, it will be assumed that the doctrine of res judicata and collateral estoppel are applicable to criminal prosecutions in New York. (Cf. People v Cunningham, 62 Misc 2d 515; People v Roderman, 34 Misc 2d 497; People v Dreares, 15 AD2d 204, affd 11 NY2d 906 with Martinis v Supreme Court, 15 NY2d 240.) (See, also, Ashe v Swenson, supra; Ann 9 ALR3d 203, 231.)
The doctrines of res judicata and collateral estoppel, as they govern criminal cases, preclude relitigation of issues resolved by a final determination in a former trial. (See, generally, Ann 9 ALR 203.) In applying these principles, the first test is to see what issues the prior determination decided. (Sealfon v United States, 332 US 575, 578-579; United States v Kramer, 289 F2d 909, 913; United States v Lopez, 420 F2d 313, 317.) If the factual basis of the former determination cannot be definitely ascertained, the doctrines do not apply. There will be no bar to a subsequent prosecution unless the facts or issues so *716 determined are necessarily decisive in that prosecution. In other words, the evil to be avoided is the possibility of a conviction that contradicts the former determination. (People v Cornier; 42 Misc 2d 963; Woodman v United States, 30 F2d 482, cert den 279 US 855; United States v Carlisi, 32 F Supp 479; United States v Halbrook, 36 F Supp 345.) Only then does the court examine how that determination bears on the second case. (United States v Kramer, supra.)
In examining the specific issues presented herein, it must be noted that the crime of conspiracy is separate and distinct from the related substantive crimes (Pinkerton v United States, 328 US 640) and acquittal of the former does not per se foreclose conviction of the latter. (United States v Pappas, 445 F2d 1194, cert den sub nom Mischlich v United States, 404 US 984.)
Further, conspiracy and aiding and abetting are separate offenses (Nye & Nissen v United States, 336 US 613) and similarly an acquittal for the former does not per se preclude conviction for the latter. (Sealfon v United States, supra.)
B. THE FIRST TRIAL
In order to determine whether the trial order dismissing the conspiracy count resulted from a finding of fact in favor of the defendant which would be essential to the proof of the substantive crimes, I have carefully examined the record of the first trial including the motions made and the Judge’s ruling thereon. (People v Louis, 1 NY2d 137; People v Cunningham, 62 Misc 2d 515, 521, supra.)
The trial record of some of the colloquy surrounding the trial order of dismissal is most instructive on these issues.
"the court: It seems to me that the difference between acting in concert and conspiracy is that in order to make out a conspiracy there has to be some sort of a corrupt agreement, a meeting by one or more of the conspirators with each other in order to enter into a corrupt agreement.

You show me when the corrupt agreement was made”.

"the court: I am still not clear as to what the differences are between acting in concert and conspiracy.”
"the court: Was there any evidence in this case that any of the defendants, as originally indicted, ever talked to each other? The only conversation that came across in this case, as I remember it, was between one of the defendants and a police *717 officer, but never one defendant talking to another. I am trying to make out the difference of conspiracy vis-á-vis acting in concert.
"Let me read the conspiracy definition to you. 'A person is guilty when, with intent that conduct constituting a Class A Felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.’
"We haven’t had that testimony in this case. We have never had any testimony before the Court and jury of the conversation between two defendants. It has always been between a defendant and a police officer.
Tell me the difference—
[Prosecutor]: I disagree.
the court: Where?
[Prosecutor]: All the portion of the tape that deals with the Spanish conversation. They certainly weren’t speaking to Officer Valente or Officer Pinto, because they cannot speak Spanish. When Mr. Alvarez [defendant] said these things, T don’t want to wait with the stuff too long,’ I direct the Court as to who he was talking to. Was he talking to Mr. Cruz or Officer Valente or Officer Pinto?
I contend that, it’s clear on that, he was talking to Mr. Cruz.
the court: Assuming that is so, aren’t you now talking not of the conversation in contemplation of the commission of a crime, but a conversation during the commission of a crime? This is the difference in my mind, between acting in concert and conspiracy. In a conspiracy you must have a conversation, a corrupt agreement by two or more persons with intention to commit a crime.
[Prosecutor]: Which the case law holds out can come out of the facts of the case.
the court: I am just trying to define conspiracy and acting in concert.
[Prosecutor]: The nodding of the head, I think, is an action where there was some understanding between the two individuals as to what was to be done at that particular point. People nod their heads every day in life, but everytime when two people are in a car and one nods their head at the other, the other person doesn’t immediately go to the glove compartment and pull out a package.
the court: Again, you see, you are not talking about the
*718 conspiracy. You are talking about the perpetration of the crime itself.
[Prosecutor]: All action and perpetration of the crime is part of the conspiracy.
the court: Conspiracy comes before the crime itself.
[Prosecutor]: I say it comes before and during.
the court: I say that the acting in concert comes during the commission of the crime.. The conspiracy must necessarily come before the crime. This is where we are having difficulty here.” (Emphasis supplied.)
Several points are revealed by this review. It is clear from the colloquy that the Judge believed that direct proof of an express agreement was required for a prima facie showing of conspiracy. The lack of such direct proof appears to be the basis for the trial order dismissing this charge of conspiracy.
The decision did not go to proof of the overt acts charged in the conspiracy or the substantive crimes. The court’s ruling was expressly limited to the conspiracy count and did not reach the issue of aiding and abetting. (See discussion of accessorial conduct, supra.)
Finally, no finding was made with respect to the proof of the requisite knowledge or intent for the substantive crimes or whether the defendant solicited, requested, commanded, importuned, or intentionally aided any other person in the commission of the crimes charged.
C. The Second Trial
Having ascertained the basis for the trial order of dismissal —that there was no direct proof of an express agreement — the bearing of this ruling on the second trial must be determined. (United States v Kramer, 289 F2d 909, supra.)
In the second trial, the prosecution presented essentially the same evidence as they had previously presented. Again, there was no direct proof of an express agreement by this defendant. [In the instant trial the issue of whether the jury was justified in its verdict of conspiracy on the basis of circumstantial evidence need not be reached since that charge has already been dismissed by me on other grounds.]
Accordingly, the findings of fact supporting the trial order of dismissal did not determine any issue necessarily decisive in the second trial. There is no contradiction by or bar to the prosecution or conviction of the substantive crimes herein.
*719 Specifically, the proof that the defendant’s actions constituted the elements of the substantive crimes, either as a principal or an accessory, did not require direct proof of any express agreement. (Cf., United States v Granello, 365 F2d 990, 993, cert den 386 US 1019, rehearing den 387 US 949.)
Nor did the dismissal of the conspiracy charge at the first trial require the exclusion of the statements of alleged "partners in crime” at the present trial as long as there was an adequate independent basis for their admission. (United States v Lopez, 420 F2d 313, 317, supra.) As determined in section II of this opinion there was an adequate basis for such admission.
Lastly, it must be noted that the burden is on the defendant to show that the disposition of the prior trial necessarily decided the issues raised in the second prosecution. (United States v Gugliaro, 501 F2d 68, 70; United States v Tramunti, 500 F2d 1334, 1346, cert den 419 US 1079; United States v Friedland, 391 F2d 378, 382.) Clearly this burden has not been met here.
On the basis of the above findings, there is no reasonable possibility that any evidence presented at this trial was precluded by the prior trial order of dismissal. Evaluating the entire record of both trials, there is no reasonable possibility that any error, caused by the inclusion of the conspiracy count, contributed to the defendant’s conviction. Thus, I find it to be harmless beyond a reasonable doubt. (People v Crimmins, 36 NY2d 230.)
CONCLUSION
Therefore, the motion is granted to the limited extent of setting aside the jury verdict on conspiracy in the first degree and dismissing that count of the indictment. The motion with respect to the other charges on which the defendant was convicted is denied.