Edward Thompson, J.
Defendant moves to suppress evidence allegedly seized in violation of Ms constitutional rigMs.
Succinctly, the facts are as follows: In a .residential neighborhood of Forest Hills at 12:45 a.m. a police officer on radio motor patrol observed the defendant seated behind the wheel of a motor vehicle parked at the curb. After observing the defendant for some time, and believing that the defendant might possibly be there for criminal purposes, the officer approached the defendant and inquired as to what he was doing. The defendant replied that he was tired, was resting and that he had come from his girl friend’s house in Bosedale and was going home to Flushing. He said that he had driven the vehicle to the place where he was then parked and questioned. The officer thereupon demanded his operator’s license and proof of the registration of the vehicle, which documents the defendant produced. After having examined the operator’s license and having checked the registration with the license plate on the car, the officer opened the front left door to examine the identification number mounted on the front left door jamb, this in order to verify the accuracy of the identification number on the certificate of registration. He used a flashlight to look at the face of the defendant and at the identification number. As he opened the door he observed in plain view, without the benefit of the flashlight, a policeman’s wooden billy club some 18 inches in length lying on the floor adjacent to the door jamb and the seat occupied by the defend *747 ant. Said billy club had been hidden between the driver’s seat and the door when the door was closed. The officer took possession of the billy club, ordered the defendant to leave the car and placed him under arrest for possession of a dangerous instrument. As the defendant emerged from the car, he sounded the horn with his hand. The police officer and his partner searched the outside area in the vicinity of the car, placed the defendant in the police car, and the arresting officer drove the defendant’s car. Both cars circumnavigated the block and then proceeded to the police station. En route the arresting officer examined the glove compartment of defendant’s car and there found another billy, and an envelope which a continued search at the station house revealed to contain a felonious quantity of marijuana and accoutrements for its use, all of which, together with the billy club first seized, constitute the contraband sought to be suppressed by this motion.
The defendant has been indicted for the possession of the dangerous instruments as a misdemeanor and the criminal possession of a dangerous drug in the second degree as a felony.
Two questions are thereupon posed as a matter of law. (1) Is a police officer justified in opening a door of a motor vehicle to verify the serial number while checking a certificate of registration, and (2) is he thereafter justified in searching the hidden portions of the vehicle without a warrant after he has arrested the operator for possession of a dangerous instrument in plain view.
(1) Section 401 of the Vehicle and Traffic Law specifically provides that a police officer may demand any operator of a motor vehicle to produce for inspection any certificate of registration and “ any information necessary for the identification of such vehicle and its owner ”. (subd. 4.) The validity of section 401 has been reviewed by the State and Federal courts in a number of cases.
Recently in People v. Frank (N. Y. L. J., June 16, 1969, p. 19, col. 7), it was held that the raising of the hood of an automobile by police who had reason to believe that the vehicle was stolen was proper police procedure pursuant to section 401. The court particularly noted therein that the use of a motor vehicle on the public streets and highways is a privilege and not a right. (People v. Rosenheimer, 209 N. Y. 115, 121; Ives v. South Buffalo Ry. Co., 201 N. Y. 271.) Too, in People v. Bencivenga (N. Y. L. J., Feb. 18, 1969, p. 19, col. 3) it was held that on a “ spot check ” of a motor vehicle the police, after verifying the serial number on the inside door post and finding that it matched the number on the registration certificate, had a further right, *748 pursuant to section 401 to lift the hood and examine the serial number on the motor. As a general proposition, it was theretofore decided in Cotton v. United States (371 F. 2d 385) that where there is a legitimate reason to check the serial number and motor number, action by police to make such determination is not a search because the object of such police action is not to find evidence or objects placed in the car, but merely a check to identify the motor vehicle.
Consequently, I hold that where the police have legitimate reason to believe that surreptitious circumstances may surround the operation of a vehicle, they may inquire into all areas of identification thereof in order to verify the accuracy of any document certifying the ownership of the operator, all without a warrant. Such conduct by them is not a search and it is not violative of the defendant’s privilege under the Fourth Amendment. When such circumstances exist, and I deem them present in this case, the seizure of contraband in plain view is lawful. Therefore, the first question is answered in the affirmative.
(2) It is now axiomatic that a search made simultaneously with an arrest is valid without a warrant. (People v. Loria, 10 N Y 2d 368.) For possession of contraband discovered and seized under such conditions any defendant may lawfully be held to answer under the law provided the search is reasonable.
But the question which also arises in this case is whether the seizure of the first billy, although resulting from an observation in plain view, entitles the police to commandeer the car and search without a warrant. In law the determinant of legality may only be found in the factual proposition of a lawful seizure from the car and a continuing search of the car thereafter. Understandably, but certainly not justifiably here, the police could have procured a warrant if the same had been necessary, this particularly so since the ownership, operation and possession by the defendant of the car proved to be a completely lawful act. But the same is unnecessary where a police search of the hidden parts of the car without a warrant is reasonable. If the reasonableness of the search is founded upon the arrest for the first billy and any conduct of the defendant giving rise to a belief in the mind of the officer that he might possibly be endangered by the hidden weapons, lethal instruments, contraband or overt assistance by an accomplice or accomplices hitherto undisclosed, such a search is lawful. The act of the defendant sounding the horn falls well within this category and in my judgment allows and permits the police to seize the car for further search both en route to the station house and subsequently upon arrival thereat. More particularly, that search is justifiable without a *749 warrant over premises and vehicle which are considered to he in the lawful possession and control of the defendant.
The Supreme Court in Terry v. Ohio (392 U. S. 1) and more recently in Chimel v. California (395 U. S. 752, 762-763) set the limits to which a warrant or search may extend when it is incidental to an arrest as follows: “ When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee’s person and the area ‘ within his immediate control ’ — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.”
The foregoing language, though appearing to be quite narrow, most certainly allows and permits the search of the car of this defendant since the same was entirely under his control and in his possession. Common sense dictates that the search of an auto or other things readily removable cannot be treated identically with searches of a fixed structure such as a house or a building. What may be an unreasonable search of a house may be quite reasonable in the case of a motor vehicle.
While in Preston v. United States (376 U. S. 364) evidence seized from the defendant’s car searched in a garage remote from the station house to which it had previously been taken was suppressed because of the remoteness of the search from the circumstances of the arrest, such are not the facts in this case. Rather the facts herein fall in line with the doctrine advanced in People v. Montgomery (21 A D 2d 904) wherein there was a brief but reasonable suspension of the search. Completion of the same was inadvisable at the place of arrest and the search thereafter was continued and completed immediately at the station house. Under those circumstances it was held that the search was incidental and contemporaneous with the lawful arrest and therefore the evidence seized thereunder was properly admitted into evidence.
*750 Similarly, in People v. Hatch (25 A D 2d 606) the defendant was arrested in the nighttime on a public highway and it was inadvisable to complete the search at that location. Thereafter the search was completed at the station house. Citing Montgomery (supra), the court held similarly that suppression should be denied. Shortly thereafter in People v. Moschitta (25 A D 2d 686) the defendant driving his own motor vehicle was convoyed by the police to the station house, this for driving with stolen license plates. While the defendant was being questioned at the police station, the arresting officer, not in the defendant’s presence, but in an effort to identify the defendant’s automobile broke open its trunk outside the station house and discovered a pistol. The court found that such search of the trunk was incidental to and contemporaneous with a lawful arrest citing dgain Montgomery (supra).
Because of the defendant’s conduct in sounding the horn, it is totally reasonable to say that an immediate and thorough search of the defendant’s motor vehicle at the time of his arrest became inadvisable. Bather 'the conduct of the police in searching the outside area of the car and circumnavigating the block to look for any accomplice was most reasonable.
From all of the foregoing, I hold that the search of the defendant’s vehicle en route to the station house and its completion in front thereof are reasonable. For the possession of any contraband discovered and seized under such circumstances, this defendant may lawfully be held to answer under the law.
Accordingly, the second question is similarly answered in the affirmative.
Consequently, the motion is denied in all respects.